### INVIOLABILITY OF A MUNICIPAL FRANCHISE.

Common Pleas Court of Hamilton County.

THE UNION GAS & ELECTRIC COMPANY v. THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY.

Decided, March 3, 1913.

*Municipal Corporations—Easement to Gas Company to Lay Pipe in Street—Can Not be Abrogated by Vacation of Street—Gas Company May Recover Damages for Interference with Its Pipe.*

1. A franchise, granting to a gas company the right to lay its pipes in the streets and alleys of a municipality, is a contract between the gas company and the municipality, which can not be abrogated as to one of the streets included therein by vacation of said street by the municipality and the reversion of title therein to the abutting owners;  but the right to maintain said pipe continues so long as the right remains in the company to supply gas to the municipality and its inhabitants.

2. Where the abutting owner is a railway company, who after vacation of the former street changed its grade for the purpose of laying a track thereon, and in so doing exposed the gas pipe and made it necessary that it should be relaid, the railway company is liable to the gas company for the cost of so relaying said pipe.

*Mr. Hoadly,* of *Harmon, Colston, Goldsmith & Hoadly,* cited in support of the demurrer:

*Dickinson* v. *Arkansas City Improvement Co.,* 77 Ark., 570; also, 92 S. W. Rep., 21; *Thomsen* v. *McCormick,* 136 Ill., 135; also, 25 N. E. Rep., 373; *Atchison, Topeka & Santa Fe Railway* v. *Patch,* 28 Kansas, 470; *Showalter* v. *Southern Kansas Ry. Co.,* 49 Kansas, 421; 32 Pac. Rep., 42; *Gas Co.* v. *Columbus,* 50 Ohio St., 65; *Roanoke Gas Co.* v. *City of Roanoke,* 88 Va., 810.

*Mr. Miller Outcalt* cited, contra:

*Suburban Elec. Light Co.* v. *East Orange* (N. J.), 41 Atl. Rep., 865; *Truesdale* v. *Newport* (Ky.), 90 S. W. Rep., 549; 28 Ky. L. Rep., 840; *State* v. *Laclede Gal Light Co.,* 102 Mo., 472; *Louisville Gas Co.* v. *Citizens Gas Co.,* 115 U. S., 683; *Gibbs* v. *Consolidated Gas Co.,* 130 U. S., 396; *Peoples Gas Light Co.* v. *Hale,* 94 Ill. App., 406; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S., 1; *Chicago & C. Co.* v. *Lake,* 130 Ill., 42; *Southwest Missouri Light Co.* v. *Joplin,* 113 Fed. Rep., 817; *Dorsch* v. *Glass Co.,* 74 Ohio St., 208; *Railway* v. *Elyria,* 14 C. C., 48; *Railroad* v. *Cincinnati,* 76 Ohio St., 481; *Railway* v. *Elyria,* 69 Ohio St., 414; *In re Hotel Alley,* 25 Bull., 89; *Kinnear Manufacturing Co.* v. *Beatly,* 65 Ohio St., 264.

DICKSON, J.

In this case the defendant has filed a general demurrer to the petition. The questions thus raised can be best understood by setting out the petition:

"The plaintiff is a corporation organized and existing under the laws of the state of Ohio, and is, and has been for many years, engaged in the business of supplying gas and electricity to public and private consumers in the city of Cincinnati for light, heat, power and fuel purposes.

"The defendant is a corporation organized and existing under the laws of the state of Ohio and is engaged in the business of operating a steam railroad, known as the Cincinnati Southern Railway.

"Plaintiff says that prior to May 18, 1892, the city of Cincinnati had by ordinance granted to the Cincinnati Gas Light & Coke Company, a corporation, and being the same corporation subsequently known by the name of the Cincinnati Gas & Electric Company, an easement in and through the streets, lanes and

public ways of said city for the purpose of constructing and maintaining therein service mains for the purpose of supplying gas to the city of Cincinnati and its inhabitants, including an easement in and through Dalton avenue, a public street and way of said city, from Hopkins to Kenner street in said city. Said easement was accepted by said the Cincinnati Gas Light & Coke Company, and early in the year 1894, it caused to be laid in Dalton avenue, between Hopkins and Kenner streets, a certain gas main of twenty-four inches in diameter, located at a grade of about four feet below the surface of said avenue.

"Plaintiff further says that it is the successor in business of said Cincinnati Gas & Electric Company, and by virtue of a lease entered into with said company on September 1, 1906, is now in possession and control of, and operating as a going concern, all of the property, real, personal and mixed owned by said the Cincinnati Gas & Electric Company at the date of said lease, or thereafter acquired, and constituting its gas and electric plants for light, heat, power and fuel purposes, including all contracts, rights, privileges and franchises connected therewith or relating thereto; that the council of the city of Cincinnati had by resolution duly passed, consented to the leasing by said the Cincinnati Gas & Electric Company of its property, rights, privileges and franchises to the Union Gas & Electric Company, the plaintiff herein.

"On the 18th day of May, 1892, the defendant company being then in possession, as lessee, of the lands abutting on the east and west sides of Dalton avenue between Hopkins and Kenner streets, in said city of Cincinnati, made an application, *ex parte*, to the Common Pleas Court of Hamilton County, Ohio, and being cause numbered 93150 on the docket of said court, for the vacation of certain streets in the city of Cincinnati, and among others, prayed for the vacation of Dalton avenue, between Hopkins and Kenner streets. In said proceeding a hearing was had on June 25, 1894, whereupon an order was made by said court finding, among other things, that said Dalton avenue, extending northwardly from the north line of Hopkins street to the south line of Kenner street should be vacated, but that before a final decree would be entered the said the Cincinnati, New Orleans & Texas Pacific Railway Company was required to execute and deliver to the city of Cincinnati an agreement in writing, providing that said railway company before closing said Dalton avenue, among other things, would pave Lincoln Place, and that the public should not be excluded from the use of Dalton avenue as a street until the said the Cincinnnati, New Orleans & Texas Pacific Railway should be ready to use the lands east of Dalton avenue for terminal facilities, and should have begun to erect sheds

therefor in substantial compliance with the plan submitted to the court during the trial of said case; that said railway company, its successors and assigns, should, at all times, permit the Cincinnati Gas Light & Coke Company, its successors and assigns, to enter upon Dalton avenue and other streets proposed to be vacated, for the purpose of laying, keeping in repair, changing or removing its gas mains or pipes in said streets and avenues, and permit the city of Cincinnati, at all times, to enter upon said streets and parts of streets proposed to be vacated, for the purpose of laying, keeping in repair, changing or removing its system of water pipes therein, and permit said city to have access to the sewer in Hopkins street for the purpose of repairing or dealing with the same; also to obtain from the trustees of Sarah Bella McLean, deceased, and Lewis H. Gerrard, deceased, an agreement in favor of the city of Cincinnati that they would rededicate said streets and parts of streets in case the leases of said abutting property to the Cincinnati, New Orleans & Texas Pacific Railway Company should be forfeited, surrendered or canceled in any manner before the expiration of the lease from the city of Cincinnati to the Cincinnati, New Orleans & Texas Pacific Railway Company of the Cincinnati Southern Railway. Subsequently, to-wit, on June 7, 1902, the said the Cincinnati, New Orleans & Texas Pacific Railway Company executed an agreement with the city of Cincinnati that it would abide by and perform the terms and conditions named in said order entered June 25, A. D. 1894, in said proceeding. Said agreement was duly recorded on December 5, 1902, in Deed Book 881, page 467, Hamilton County Recorder's Office. On November 26, 1902, a final decree was entered declaring that Dalton avenue from the north line of Hopkins street to the south line of Kenner street should be vacated.

''Plaintiff says that at a time or times unknown to plaintiff or its lessor, said defendant did, in violation of the rights of the said, the Cincinnati Gas & Electric Company and the plaintiff, remove the earth from the surface of Dalton avenue, beginning near the south line of Kenner street, and extending southwardly about three hundred feet, so that the gas main therein became exposed and rendered in a dangerous condition; that said defendant laid its ties and rails immediately upon said gas main; that said exposed and dangerous condition of said gas main was not discovered until about August 1, 1910; that thereupon said dangerous condition was brought to the attention of the defendant company and its officers, who refused, upon demand, to rectify said condition. Thereupon, in order to maintain its gas service in a condition of safety, and to avoid danger to life and property, the plaintiff, after notice to defendant and demand made upon it, was obliged to reconstruct and lay a new twenty-four inch

main about two feet six inches below the ties and track of said defendant at the place where defendant had removed the earth from said Dalton avenue, at an expense to the plaintiff in the sum of two thousand one hundred and sixty-nine and 12-100 ($2,169.12) dollars.''

The defendant claims that the proceedings to vacate Dalton avenue are void, because the defendant was a lessee and not the owner of the abutting property.

It is admitted the vacation was ordered by the Common Pleas Court of Hamilton County, Ohio. Such an order by a court is valid, being an action *in rem,* until set aside in a direct proceeding brought for that purpose. It can not be attacked here.

After Dalton avenue was thus vacated, the land freed from public rights reverted to the abutting property owner—the defendant.

The said common pleas court, as a condition for a decree, in the proceedings to vacate, had no right to exact from the defendant any agreement limiting its rights as an abutter in the land vacated. At best this condition can only serve as an admission that the plaintiff gas company was or might be an occupying claimant.

The first issue raised by the demurrer is—

Has the plaintiff gas company any right in the land vacated and now occupied by the defendant.

If not, the demurrer must be sustained.

If it has, the demurrer must be overruled. If overruled a second issue raised by the demurrer is—

Has the defendant the right which the city once had to conform the grade of the land vacated to its necessities and compel the plaintiff to protect itself at its own expense?

First. Has the plaintiff any right in the land in question?

It is well settled that the public rights in the vacated street are gone. It is claimed that this vacation by a court destroyed plaintiff's rights in that street.

If the vacation of Dalton avenue extinguished plaintiff's easement to use that main to supply gas to the city and its inhabitants, the result necessarily follows that the said Common Pleas Court in that proceeding to vacate that street revoked the plaintiff's franchise.

Whatever power the Constitution may have given the General Assembly over public franchises, this court can not hold that the General Assembly had the power or the intention in these vacating sections of the statutes to indirectly revoke a franchise.

The General Assembly, and through it its appendant the municipal council, has the power to control the streets, and under this power the council has the right to grant franchises in the streets for the benefit of the public, such as gas company and street railway franchises. Such uses are among the proper uses of a highway.

There is no claim that the plaintiff gas company's franchise in Dalton avenue was not valid before the vacation

Such a grant to the plaintiff, while not in perpetuity, at least obtains as long as the right remains in the plaintiff to supply gas to the city and its inhabitants.

The court is of the opinion that the vacation of Dalton avenue did not revoke the right of the plaintiff, a private property right acquired by contract, to maintain its main there for the purposes above stated, and that the defendant acquired this land subject to the plaintiff's easement.

Second.  Has the defendant company the right to conform the grade of the vacated land—now its land—to its necessities regardless of the plaintiff's rights?

Before vacation the city had the right to adapt Dalton avenue to its necessities and thus require the plaintiff company to move its pipes at its own expense.

When the gas company obtained its rights in Dalton avenue, such rights were at all times subject to the necessities of the city, necessities of the public, in its use of Dalton avenue.

The regrading of Dalton avenue by the defendant was done for a railroad's necessities. Such necessities were not contemplated as parts of the original franchise contract.

The rights of the plaintiff and the defendant now, since the vacation, in the land in question, are reciprocal. Each must use its own so as not to injure the rights of the other, i. e., if the plaintiff's facts be true, viz., the defendant's use of the land for its necessities has caused injury to the plaintiff, it is liable therefor.

The demurrer will be overruled.